**Tagged Opinion**



ORDERED in the Southern District of Florida on _8/20/2008_

John K. Olson, Judge
United States Bankruptcy Court

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

In re:

**CHRISTINE MARY NECLERIO,**

    Debtor.

_____/

Case No. 07-18991-BKC-JKO

Chapter 13

### ORDER DENYING CONFIRMATION OF FIRST AMENDED PLAN [DE 40]

**THIS CASE** came before the Court on April 14, 2008, for confirmation of Christine Mary

Neclerio's (the "Debtor") First Amended Chapter 13 Plan (the "Plan") [DE 40]. The issue squarely

presented here is the meaning of the phrase "projected disposable income" in 11 U.S.C. §

1325(b)(1)(B). I conclude as a matter of statutory interpretation that "projected disposable income"

means the same thing as "disposable income" as defined in § 1325(b)(2). I reach this conclusion

reluctantly, both because it causes me to differ from the conclusions reached by other Florida

bankruptcy judges and because it may result in chapter 13 plan payment requirements which are

curiously divorced from the debtor's actual financial condition. At the extremes, the result which

flows from this statutory construction can be grossly unfair. Nonetheless, the language enacted by Congress in the ill-named Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") expressly withdrew from the bankruptcy courts the ability to apply reasonable discretion in favor of a mechanical test. In applying that test here, I conclude that the Debtor's Plan does not provide that all of the Debtor's "projected disposable income" be paid into the Plan during the applicable commitment period and that the Plan is accordingly not confirmable pursuant to 11 U.S.C. § 1325. Confirmation must therefore be denied.

**I. FACTS**

The Debtor filed her voluntary bankruptcy petition [DE 1] under Chapter 13 of the Bankruptcy Code on October 23, 2007. According to Debtor's Bankruptcy Form B22C [DE 3], her monthly "Disposable Income" is $4,103.30. *See* Line 58 at [DE 3]. Further, the Debtor is well above the applicable median income for families her size.[1]

The Plan provides for the Debtor to pay $477.40 over the first four months and $594.00 over the remaining 56 months. Thus the Debtor proposes to pay a total of $35,173.60 over the 60 month commitment period. The Debtor lists in her Amended Summary Schedules $49,725.46 of unsecured non-priority claims. *See* [DE 39].

---

[1]The Debtor's annualized income, as defined by 11 U.S.C. § 1325(b)(3), is $149,334.60 and the applicable median family income for this Debtor is $38,927.00, resulting in the Debtor being approximately $110,000 above the median family income for a similar situated family. *See* Lines 20-22 at [DE 3].

**II. DISCUSSION AND ANALYSIS**

Section 1325 of the Bankruptcy Code, which sets forth the requirements for the confirmation of a chapter 13 plan, was substantively changed in BAPCPA. This change has lead to a difference of opinion among many courts around the country.

Prior to the enactment of BAPCPA, when the trustee or an unsecured creditor objected to a chapter 13 plan, the Bankruptcy Code under section 1325 permitted approval of that plan if:

> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

> (B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

11 U.S.C. § 1325(b)(1) (2005). "Disposable income" was defined as "income which is received by the debtor and which is not reasonably necessary to be expended." 11 U.S.C. § 1325(b)(2) (2005). The case law interpreted this computation as "income not reasonably necessary for maintaining or supporting the debtor or a dependent, with that determination being made on an estimated basis at plan confirmation." *In re Slusher*, 359 B.R. 290, 294 (Bankr. D. Nev. 2007) (internal citations omitted). It was common practice for bankruptcy courts to look to the difference between Schedule I (current income at the time of filing) and Schedule J (current expenses at the time of filing) when calculating the debtor's projected disposable income for a 11 U.S.C. § 1325(b)(1)(B) analysis. *Pak v. eCast Settlement Corp. (In re Pak)*, 378 B.R. 257, 262 (B.A.P. 9th Cir. 2007); *Kibbe v. Sumski (In re Kibbe)*, 361 B.R. 302, 307 (B.A.P. 1st Cir. 2007).

-3-

However, BAPCPA made a significant change to section 1325(b). Now, when the trustee or an unsecured creditor objects to a plan, the Bankruptcy Code permits approval of that plan if "as of the effective date of the plan":

> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1). "Disposable income" is now defined as "current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended. . ." 11 U.S.C. § 1325(b)(2). The term "current monthly income" is itself defined in the Code and represents a historic six-month average, prior to the date of filing of the petition, of debtor's income from all sources during that period excluding certain limited exceptions, such as Social Security payments. *See* 11 U.S.C. § 101(10A). Section 1325(b)(3) provides for above median income debtors (like the Debtor here) reasonable and necessary expenses to encompass a 11 U.S.C. § 707(b)(2) analysis. For those debtors who fall below the median income, there is no statutory guidance as to how expenses are derived for "disposable income." However, courts have interpreted this exclusion in the drafting to mean that the old practices apply, i.e. courts should primarily use Schedule J in computing the statutory requirements. *See, e.g., In re Fuller*, 346 B.R. 472, 483 (Bankr. S.D. Ill. 2006); *In re Schanuth*, 342 B.R. 601, 604 (Bankr. W.D. Mo. 2006).

-4-

With this change in section 1325, many courts have struggled to determine what Congress meant by "projected disposable income" and have reached radically different conclusions. Two basic lines of reasoning have emerged.

One line of authority holds that there is a distinction or ambiguity in the term "projected disposable income." This view was first expressed in *In re Hardacre,* 338 B.R. 718 (Bankr. N.D. Tex. 2006). *Hardacre* and its progeny focus less on the historical income analysis as defined in § 1325(b)(2), in favor of the ability of the Court to utilize a more forward looking approach when calculating "projected disposable income." In *Hardacre* the perceived statutory ambiguity or distinction requiring judicial exploration stems from the word "projected," which appears directly before "disposable income," and is otherwise absent in the Bankruptcy Code. This approach, holding "projected disposable income" to be wholly separate term, requires a court to consider not just the debtor's prior financial history but current and anticipated changes in the debtor's financial situation.[2] To support this conclusion, the *Hardacre* court looks to the "as of the effective date of

---

[2]The *Hardacre* conclusion has been adopted by numerous courts that have added different nuances to this analysis. *See, e.g.*, *In re Arsenault*, 370 B.R. 845 (Bankr. M.D. Fla. 2007) (finding ambiguity between "disposable income" and "projected disposable income," adopting *Hardacre* line of reasoning and stating to do otherwise would be at odds with "Congressional intent and common sense," however, exemptions in Form B22C, as calculated under section 1325(b)(3) for above median debtors, apply); *In re LaPlana*, 363 B.R. 259 (Bankr. M.D. Fla. 2007)(holding that "projected" is distinct and thus the court must look to current and anticipated financial situation, not merely historic numbers, at the time of confirmation of a chapter 13 plan). *In re Purdy*, 373 B.R. 142 (Bankr. N.D. Fla. 2007)(projected disposable income is a forward-looking concept, thus, form B22C calculations controls unless the debtor or the trustee can show that the numbers do not reflect a fair projection of debtor's budget into future based on substantial change in circumstances); *In re Hughey*, 380 B.R. 102 (Bankr. S.D. Fla. 2007)(Form B22C is a starting point for income, but, given the circumstances schedule I was the proper calculation for income, and expenses for above median debtors is strictly dictated by 1325(b)(3)); *In re Jass*, 340 B.R. 411 (Bankr. D. Utah 2006) (section 1325(b)(2) is merely a starting point for deriving "projected disposable income" and, thus, Form B22C creates a presumptively correct definition of disposable income which can be rebutted or supplemented by other evidence); *In re*

the plan" language in § 1325(b)(1), finding that "[t]his language suggests that the debtor's income 'as of the effective date of the plan' is the one relevant to the calculation of 'projected disposable income,'" not income prior to the filing of the bankruptcy case. 338 B.R. at 723.

Some courts take a slightly different position and hold that there exists no ambiguity in the statute and that the word "projected" "has independent significance," as it means "to calculate, estimate, or predict (something in the future), based on present data or trends." *In re Jass*, 340 B.R. 411, 415 (Bankr. D. Utah 2006) (internal citations and quotations omitted). Thus the term "projected" necessarily means a future oriented prescription, while "disposable income" is necessarily a calculation of tangible financial numbers rooted in the debtor's historic income and reasonable expenses. *Id.* at 416. *Jass* stands for the proposition that Form B22C is assumed to provide sufficient construction for "disposable income", but may be rebutted in the final analysis when formulating "projected disposable income" for confirmation.

A minority of courts have taken the position that in calculating "projected disposable income," the figure derived from Form B22C, without adjustments for considerations arising from

---

*Edmunds*, 350 B.R. 636 (Bankr.D.S.C.2006)(looks forward to time of confirmation and thereafter); *In re Kibbe*, 342 B.R. 411 (Bankr.D.N.H.2006) (*aff'd*, 361 B.R. 302 (B.A.P. 1st Cir. 2007)) (same); *In re Devilliers*, 358 B.R. 849, 864 (Bankr. E.D. La. 2007) ("By viewing the historical calculations of disposable income through the prism of current circumstances, the Court may both 'project' debtor's future disposable income and give effect to the entirety of the Code's provisions"); *In re Pak*, 357 B.R. 549 (Bankr. N.D. Cal. 2006) (*aff'd, Pak v. eCast Settlement Corp.*, 378 B.R. 257 (B.A.P. 9th Cir. 2007))("disposable income" is merely a starting point in determining "projected disposable income"); *In re Liverman*, 383 B.R. 604 (Bankr. D. N.J. 2008) (debtor's ability to pay creditors as of effective date of plan is most accurately depicted in debtor's Schedules I and J); *In re Lanning,* No. 06-41037, 2007 Bankr. LEXIS 1639, 2007 WL 1451999 (Bankr. D. Kan. May 15, 2007) (*aff'd*, 380 B.R. 17 (10th Cir. BAP 2007))(holding that disposable income as calculated from Form B22C is only the starting point in determining projected disposable income and may be modified if facts show that the calculation fails to accurately predict debtor's actual ability to fund the plan).

pre-petition fluctuations in income or post-petition circumstances, is solely conclusive.[3]  This line

of cases holds that under the statute as written there is a mechanical test devoid of discretion and

courts are bound, regardless of the practicality of the result, by the calculations derived from Form

B22C.  In *Maney v. Kagenveama (In re Kagenveama)*,[4] the 9th Circuit states that, ". . . the plain

language of § 1325(b) links "disposable income" to "projected disposable income," and we are

bound by the definition of "disposable income" provided in § 1325(b)(2) . . ." 527 F.3d 990, 996 (9th

Cir. 2008).

When interpreting a statute, a court must begin by examining the language of the statute itself

and its analysis ". . . should always turn first to one, cardinal canon before all others. . . . courts must

presume that a legislature says in a statute what it means and means in a statute what it says there."

*Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992); See also *United States v. Ron Pair*

*Enterprises, Inc.*, 489 U.S. 235, 241-242 (1989); *United States v. Goldenberg*, 168 U.S. 95, 102-103

(1897); *Oneale v. Thornton*, 10 U.S. 53 (1810). "When the words of a statute are unambiguous, then,

this first canon is also the last: 'judicial inquiry is complete.'" *Germain,* 503 U.S. at 254 (citing

---

[3]  *In re Alexander*, 344 B.R. 742 (Bankr. E.D. N.C.2006) (determination made on basis of B22C, not schedules I and J); *In re Guzman*, 345 B.R. 640 (Bankr. E.D. Wis.2006) (same); *In re Farrar-Johnson*, 353 B.R. 224, 228 (Bankr. N.D. Ill. 2006) (same);  *In re Tranmer*, 355 B.R. 234, 246 (Bankr. D. Mont. 2006) (same); *In re Hanks*, 362 B.R. 494 (Bankr. D. Utah 2007) ("disposable income" and "projected disposable income" are the same); *Coop v. Frederickson (In re Frederickson)*, 375 B.R. 829, 835 (B.A.P. 8th Cir. 2007) (projected disposable income is disposable income calculated on Form B22C extrapolated over the applicable commitment period); *In re Austin*, 372 B.R. 668, 674 (Bankr. D. Vt. 2007) (if Congress had intended "projected disposable income" to mean something different than "disposable income," it could have provided a separate definition); *In re Miller*, 361 B.R. 224, 228 (Bankr. N.D. Ala. 2007) (Form B22C is dispositive with respect to above-median income debtors' "projected disposable income").

[4]This is the only circuit court opinion deciding the issue.

-7-

*Rubin v. United States*, 449 U.S. 424, 430 (1981). However, this will not hold true if the disposition required by the text is "absurd." *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (1942); *Caminetti v. United States*, 242 U.S. 470, 485 (1917)).

"The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997). Thus, the court should, "not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *Kelly v. Robinson*, 479 U.S. 36, 43 (1986) (internal quotations and citations omitted). When ambiguity exists in the drafting of a specific statute, then the court may look beyond the four corners of that section and rely on legislative history, purpose of the statute, and common usage of terms found in the Code for guidance as to the legislature's intent.

My Florida colleagues Judge Jennemann in *LaPlana*, Judge Williamson in *Arsenault*, Chief Judge Killian in *Purdy,* and Chief Judge Hyman in *Hughey* find that there is an ambiguity in the term "projected disposable income" when it comes to generating a value for income that should be projected over the commitment period. I reluctantly disagree with this analysis. The real underlying problem driving this current debate is not the ambiguity (or lack thereof) in the term "projected" but the result which follows from BAPCPA's change in the definition of "disposable income." Under the new statutory definition, the Bankruptcy Code creates a mechanical formula that provides for very little if any judicial discretion and drastically limits the ability of the court to ascertain the amount of money which truly represents the *actual* "disposable income" of the debtor which will be available for distribution to creditors during the chapter 13 plan commitment period.

-8-

Unfortunately, Congress has enacted a law that eliminates judicial discretion and manifests no particular concern for the practical ramifications the new mechanical test will have on debtors and creditors. The law as it now stands will necessarily lead to peculiar results. For example, in situations where a debtor has a high paying job and then loses that job and files for relief under chapter 13, that person's statutory disposable income which must be paid into the chapter 13 plan is a much higher amount than he or she will in fact be able to pay. Similarly, an above-median-income debtor whose income has been relatively modest for the six months prior to securing a much higher-paying job may then file a chapter 13 case and his or her statutory disposable income will be far lower than his or her actual income, thus leading to an inequitable result at the expense of the creditors. These consequences – however difficult to accept in an abstract equitable construct – must be accepted as the will of Congress. "If the changes imposed by BAPCPA arose from poor policy choices that produced undesirable results, it is up to Congress, not the courts, to amend the statute." *Kagenveama*, 527 F.3d at 997 (*citing Lamie v. United States Trustee*, 540 U.S. 526, 542 (2004)).

Pre-BAPCPA, the term "projected disposable income" was understood to be tied to "disposable income" – "disposable income" would be calculated and then projected, or applied, over the life of the chapter 13 plan. *See Anderson v. Satterlee (In re Anderson)*, 21 F.3d 355, 357 (9th Cir. 1994); *Commercial Credit Corp. v. Killough (In re Killough)*, 900 F.2d 61, 64 (5th Cir. 1990); *see also In re Baker*, 194 B.R. 881, 884 (Bankr. S.D. Cal. 1996):

> Projected income is typically calculated by multiplying a debtor's monthly income as of the time of confirmation by the number of months of the plan. The projected income is then compared to those projected monthly expenses which are 'reasonably necessary to be expended for the maintenance or support of the debtor' to determine the extent to which the projected income is 'disposable.' To the extent the projected income exceeds the reasonable projected expenses it constitutes 'projected disposable income' and must be committed to the plan."

-9-

[citations omitted]. Under the old statute, judges had equitable discretion to look at the actual circumstances surrounding the debtor's financial situation and make a judgment as to what the "disposable income" amounted to. There has been no real change to the structural formulation of this code section, only to the definitions of how to generate the numbers to input into the calculation. Those definitional changes have effectively removed judicial discretion.

Section 1325(b) is complete as to its intent and effect. Congress was clear as to the standard for calculating projected disposable income. There is nothing confusing about the term "projected" which modifies the term "disposable income." Congress provided a new definition of how to generate a concrete number for "disposable income." Using the debtor's disposable income one would project that value over the commitment period to ascertain the monetary sum to be paid into the chapter 13 plan.

Congress made a calculated change to the definition of "disposable income." If Congress had wished to allow for the use of other formulas for generating "disposable income," such as the pre-BAPCPA system of forward-looking analysis by utilizing the numbers in the debtor's Schedules I and J, it would have preserved the pre-BAPCPA definition for "disposable income." It did not, and I must live with those consequences absent a change in the law by Congress. Whether or not I agree with the policy decision reflected in Congress' change to the calculation of "disposable income" should not affect my ruling. I must apply the statute as written – not attempt to force a statutory interpretation to reach a more sensible policy result. The Supreme Court has, in its most recent bankruptcy statutory interpretation case,[5] reiterated a requirement that the Bankruptcy Code be given

---

[5]*Florida Department of Revenue v. Piccadilly Cafeterias, Inc.,* 128 S.Ct. 2326 (2008).

-10-

its "most natural reading."[6]   Unhappy though I am with the policy result, I conclude that the 9th

Circuit's approach in *Kagenveama* is the result mandated by the language of § 1325(b)(1)(B).

## III. THE RESULT HERE

Pursuant to 11 U.S.C. § 1325(b)(4), the commitment period for this above-median-income

debtor is sixty months. The Debtor's Bankruptcy Form B22C states her monthly disposable income

as $4,103.30, all of which is required to be applied to make payments to her unsecured creditors

under her chapter 13 Plan.    Although the mathematical calculation of payments equal to

$4,103.30/month for sixty months yields theoretical payments to her unsecured creditors under the

Plan totaling $246,198, her actual scheduled unsecured debt is $49,725.46. Regardless of the

amount of general unsecured claims which are ultimately allowed here (so long as the total claims

allowed do not exceed $248,198), the Debtor will be required to provide a 100% distribution to

unsecured creditors for a chapter 13 Plan to be confirmable. As the Plan currently stands, the Debtor

does not provide full payment of her unsecured debt and thus the Plan is not confirmable.

Confirmation will therefore be denied.

Accordingly, it is **ORDERED** that:

1.      Confirmation of Debtor's Plan is **DENIED**.

2.      The Debtor is permitted to amend her Plan, in accordance with Local Rule 3015-2(A),

prior to the confirmation hearing which will be continued and reset by separate order to

September 11, 2008. Failure to amend the Plan will result in the dismissal of Debtor's case.

---

[6]Sensible policy analysis to the contrary notwithstanding. *See* Justice Breyer's dissent in
*Piccadilly Cafeterias.*

-11-

3.    The standing chapter 13 Trustee is hereby directed to submit an order rescheduling

confirmation in this case.

### 

Copies to:

Alan R Crane, Esq
2255 Glades Rd. #337W
Boca Raton, FL 33431

Robin R Weiner
Standing Chapter 13 Trustee
POB 559007
Fort Lauderdale, FL 33355

Office of the US Trustee
51 SW 1st Ave
Suite 1204
Miami, FL 33130

Attorney Crane is directed to serve a conformed copy of this order on all parties in interest not listed
above.